THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JOSÉ VELÁZQUEZ ALVAREZ, Defendant and Appellant.

No. 14387. Argued November 7, 1950.—Decided January 23, 1951.

*Jorge L. Córdova* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

José Velázquez Alvarez was convicted in a trial by jury of the crime of murder in the second degree. After his motion for new trial was denied he was sentenced from ten to fifteen years' imprisonment in the penitentiary. Another charge against the defendant, that of violation of the Registration of Firearms Act was submitted on the same evidence introduced in the murder case. The court found him guilty and sentenced him to serve two months in jail. Not satisfied with the sentences and the order denying a new trial, defendant appealed [1] and in his brief he alleges, among other errors assigned, that the lower court erred in not decreeing a mistrial because of the remarks of the prosecuting attorney to the jury to the effect that defendant had not testified.

The exact words uttered by the prosecuting attorney in his argument to the jury and which according to

---

[1] Since the appellant did not assign any error in the case of registration of firearms and as it appears from the transcript of the evidence, p. 171, that he admitted he did not have any firearm registered, the judgment will be affirmed in said case.

appellant were sufficient for a mistrial are not stated in the transcript of the evidence. Let us turn to the incident as it appears from said transcript:

"*The Court:* The prosecuting attorney.

"*The Prosecuting Attorney:* (Takes his turn for rebuttal.)

"*The Defense:* (Interrupting the prosecuting attorney). Your Honor, I have not heard the words very clearly, but I have the impression that when he was addressing the jury the prosecuting attorney asked why the defendant did not take the stand to explain what had happened. The court will tell me if I am right.

"*The Court:* What the prosecuting attorney said is, *if my memory has not failed me,* that since the defense asked why defendant's reason for killing Lidia, the deceased, had not been proved, the prosecuting attorney then says that asking the question conversely, *why did the deceased commit suicide,* if it was suicide, as the defense alleges, *and as the only one who was in the room with Victorina was the defendant, why did he not explain with his testimony the reason Victorina had for committing suicide.*

"*Defense:* Why has the defendant not explained with his testimony what she did?

"*Prosecuting Attorney:* Exactly.

"*Defense:* We understand that this question is prejudicial to the defendant and we raise this question; we respectfully move for a mistrial because defendant has been prejudiced thereby.

"*Prosecuting Attorney:* There is no reason for that, Your Honor.

"*The Court:* Overruled.

"*Defense:* Exception, respectfully." (Italics ours.)

As it may be seen the court did not censure the words of the prosecuting attorney nor did it instruct the jury at that time, that they should not consider the remarks made by the prosecuting attorney upon examining the evidence. It was afterwards when it gave its general instructions that it referred to the incident thus:

"By an express rule of the law the defendant may or may not testify, as he may choose. It is a privilege, a very sacred

privilege which he has. It is a right that the law gives him. In this case the defendant has not testified. The fact that he failed to do so should not be considered as an incriminating circumstance since it is the duty of the prosecuting attorney to prove his guilt beyond any reasonable doubt irrespective of said omission.

"It is convenient to state here, because of the incident which took place on account of a statement made by the prosecuting attorney when he said that no evidence had been introduced as to the reason which caused the suicide of Victorina, that the parties cannot comment on the silence of the defendant because the defendant is not bound to testify; that the reports of the prosecuting attorneys and of the attorneys for the defense are mere arguments and that they are not evidence in the case; that they should bear in mind that the arguments of the prosecuting attorney as well as of the defense do not constitute evidence in the case, but they merely do it for the purpose of clearing up the truth with their arguments, *as they deem best,* in order to exact justice from you as each one sees it; that the only evidence binding on you is the proof introduced here before you and the law which I explain in the instructions. Although the prosecuting attorney, in my opinion, did not comment on the silence of the defendant because he did not say that the defendant had not testified, he did not mean to say that. He said that no evidence was introduced concerning the reason for the suicide. What he really intended was to set forth an argument. But if he made any statement, which I do not think he did, in his arguments, you should in nowise take it into account because they are mere arguments. Since the request of the defense in that sense was made in your presence, the ruling was also made in your presence. I also want to tell you that it is the duty of the prosecuting attorney to prove the guilt of the defendants beyond any reasonable doubt. That is why I want to advise you that you should erase from your minds any argument which might have been raised in the sense I have just explained to you. . . ." (Italics ours.)

Appellant argues that the first error assigned was committed and that it was prejudicial to the rights of the defendant because the conduct of the prosecuting attorney was highly improper when he commented on the silence of the

defendant which conduct was not censured by the court at any time; because no instructions were promptly given to the jury and that the error was not cured in the final instructions because the court told the jury, after the prosecuting attorney raised the improper argument, that although the arguments of the parties are not evidence in the case they try by such arguments to clear up the truth "as they deemed best"; that with this instruction the court placed the improper remark of the prosecuting attorney on the same footing as that of a lawful argument.

For a better understanding of the scope of the words uttered by the prosecuting attorney (as reported by the court) we deem it advisable to make a short summary of the facts in the case according to the theory of both parties.[2]

The prosecuting attorney maintained that he would prove with circumstantial evidence, excepting an admission made by defendant, that the latter lived in concubinage with Victorina García Rosado, and that while they were alone in the room where they lived in the evening of October 29, 1947, the defendant fired two shots at her with a .38 caliber revolver; that one shot struck the wall in which the perforation of the bullet was found and the other was fired at less than 12 inches from the right temple of Victorina while she was lying naked in bed, which shot also perforated the mosquito net causing instantly the death of Victorina; that on that same night defendant admitted to Prosecuting Attorney Gerena Bras, while the latter was investigating

---

[2] Concerning the theory of the defense we have found it in the instructions of the court to the jury for although the court reporter who acted in the case, Pedro R. Arroyo, took down in shorthand and transcribed the theory of the prosecution stated by the prosecuting attorney when the case started, he did not take down or transcribe the theory stated by the attorney for the defense. We have decided in *People* v. *Negrón*, 37 P.R.R. 765, 767, that the appellant should furnish this Court with "a complete record as showing what counsel said". Consequently, it is evident that the court reporters must take stenographic notes of the opening argument of the prosecuting attorney as well as that for the defense, in which both announce their theories to the jury in order that they may be transcribed later.

the case, that he had killed Victorina although he also denied the fact and told him that she had committed suicide. The evidence of the prosecution although it tended to prove some of said facts also proved that when several neighbors came to the room of the defendant when they heard the shots he came out weeping and said that Victorina had killed herself; that he went to look for the police and told them the same thing; that at police headquarters defendant answered the question of the prosecuting attorney "why did you do that?", saying: "I killed her, put me in jail", but when the prosecuting attorney asked him to explain why he had done it, defendant answered: "How can you believe that I would kill my wife?" (T. E. pp. 92, 95, deposition of policeman Jaime Roche Díaz); that defendant told José Ramón Santos, another policeman: "I have said the wrong thing I have told the prosecuting attorney that I killed my wife" (T. E. p. 123).

The evidence for the prosecution showed, in addition, that the nude corpse of Victorina García was found lying face downward on the floor by the side of the bed, with a bullet wound on the right temple, bleeding profusely on the floor; that the shot left a mark around the wound which shows that it was made from a distance of less than 12 inches; that the mattress of the bed had a small stain of blood (this notwithstanding that the photographs admitted in evidence showed that there was a sheet over the mattress on the bed and there was no evidence that any blood was found on the sheet); that the deceased was put on the bed; that under the left thigh of the corpse a .38 caliber revolver was found with two bullets shot and two spared; that the defendant stated he had never seen that revolver; that at the entrance of defendant's house, near the stairs, a policeman found a .38 caliber bullet which had not been shot and which he delivered to Prosecuting Attorney Gerena Bras.[3]

[3] At the hearing of the motion for new trial it was proved that said bullet belonged to Prosecuting Attorney Gerena Bras from whose pocket it had fallen.

It was proved, besides, that the paraffin test was made on the hands of both the defendant and the deceased and that the result of the test on both hands of the deceased and on the right hand of the defendant was negative while on the left hand of the defendant it was positive. There was the testimony of a witness who worked with defendant at Ochoa Fertilizer Corp. to the effect that defendant even though he used both hands in his work, used his left hand when he collected money from other employees to whom he had made loans and that besides, he had seen the defendant carrying a revolver when he went to make the collections.[4] It was proved that the revolver seized belonged to Nato Irlanda, an Internal Revenue inspector who lost it in the year 1943, as he testified.

The theory of the defense, as stated by the judge in his instructions (T. E. p. 253), was that "Victorina García committed suicide and that her death was not due to any act of the defendant; that she committed suicide because she was jealous of the defendant.' Defendant's evidence tended to prove that Victorina was always jealous of him and that she had said on several occasions and on the same night of the events that she was going to kill the defendant and kill herself; that said night the defendant was with a friend at a bar and Victorina came to get him and he told her to go and prepare them something to eat that they would follow; that thereafter a neighbor heard the defendant and Victorina talking and heard when he told her that he was going to send her to Mexico so that she would stop being jealous and she answered that they both would go and that she said then: "Now you will see how I kill you and then kill myself" (p. 195) and he answered: "My dear, you kill no one", and immediately two shots were heard; that thereafter several neighbors arrived and the defendant opened the

---

[4] Said witness admitted that he had had a quarrel with the defendant prior to the events of this case because of a pen that the witness had taken from defendant's house.

door and weeping said: "Lidia killed herself" (it was proved that Victorina was also called Lidia) ; that Victorina who was lying dead on the floor was put on the bed and that it was after she was carried out in the ambulance that a policeman cut a piece of the mattress which had a blood stain. Fernando Badrena testified that he is defendant's boss at Ochoa Fertilizer Corp. since 1938 and he knows that defendant signed the pay rolls with his right hand and that he knows he is right-handed because of the way in which he worked.

According to the theory of the defense and the evidence, the death of Victorina was due to the violent and voluntary act on her part which intention she had voiced on several occasions before carrying it out and even on the same night she died she had said she was going to kill the defendant and kill herself, her reason being, as alleged by the witnesses, that she was always jealous of defendant. Consequently, we see that the evidence of the appellant had already tended to explain the reason Victorina had to commit suicide. That said evidence might or might not be believed by the jury is a matter which plays no part in the incident that we are considering. We believe that the words of the prosecuting attorney when he asked the jury why defendant, who was "the *only one* in the room with Victorina . . . *did not explain with his testimony* the reason Victorina had for committing suicide," could only refer to the fact that the defendant had not taken the stand at the trial to explain said reason. If the evidence which he had introduced in his defense had already tried to explain the reason for the suicide, to what other evidence could the words of the prosecuting attorney refer except the testimony of defendant himself? It should be noted also, that the only intervention of the prosecuting attorney in the incident was to ratify that "exactly" the defendant had not explained with his evidence what she had done. If the defendant was the only one who was with Victorina in the room it is obvious that the prosecuting attorney was refer-

ring to the fact that the defendant had not testified as to what Victorina had done in said room. He could not refer to the other witnesses in the case since none of them had been present during the events.

In spite of the highly improper and prejudicial words of the prosecuting attorney, the court did not censure them. Nor did it give prompt instructions to the jury to disregard them.

In *People* v. *Díaz*, 69 P.R.R. 577, after having extensively reviewed the cases applicable to situations like the present, we adopted the rule prevailing in the majority of the jurisdictions of the United States that "the error committed by comments made by the district attorney on the silence of the defendant is cured *if the trial judge promptly rebukes the prosecuting attorney for his remarks and specifically instructs the jury regarding the right of the defendant to abstain from taking the witness stand.*" (Italics ours.) In adopting this rule we overruled the case of *People* v. *Roldán et al.*, 27 P.R.R. 719, and in so doing we analyzed the facts of that case as well as those of the cases cited therein which held a contrary rule. Nevertheless, it appeared from said analysis that in none of said cases the court had promptly given specific instructions to the jury as to the remarks of the prosecuting attorney on the silence of the defendant nor were the remarks of the prosecuting attorney rebuked. In stating the rule which we were adopting, we said in *People* v. *Díaz*, on p. 585:

"The right of a defendant not to testify and that such circumstance shall not create any presumption against him, should not be invaded by the district attorney with unfavorable remarks *or insinuation of any kind. If it were so invaded, he should receive from the judge presiding the trial the most severe and prompt rebuke for improper conduct; and the court should at once properly charge the jury, so that in the minds of the triers of fact there might remain no trace whatsoever that such remarks were made before them.*" (Italics ours.)

In said case the court acted promptly and gave the jury specific instructions which it subsequently enlarged in the general instructions, and we decided that the error assigned had been cured.

We cannot reach the same conclusion in the present case. Not only did the court fail to censure the words of the prosecuting attorney and charge the jury promptly so that they would not consider them and in said way cure the error, but neither was the error cured in the general instructions, since the court justified said words as a lawful argument of the prosecuting attorney, which although it did not constitute evidence it meant to clear the truth as he deemed best and in addition it erred in holding that the comment of the prosecuting attorney did not refer to the silence of the defendant.

The judgment will be reversed in the murder case which is remanded to the lower court for a new trial.

Mr. Justice Snyder did not participate herein.